IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NICOLE, P.[1]**,

        Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

        Defendant.

Case No. 6:22-cv-1765-SI

**OPINION AND ORDER**

Kevin S. Kerr, KERR ROBICHAUX & CARROLL LAW OFFICE. PO Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Megan Cleary Deponte, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Nicole P. appeals the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Income (SSI) under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). As explained below, the Court affirms the Commissioner's decision denying SSI benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on August 7, 1974, and was 45 years old on the date her application was filed. AR 21. Plaintiff alleges that she suffers from chronic migraines, neurofibromatosis (benign nerve tumors), seizures, depression, anxiety, trouble breathing, nerve damage, and mild hearing loss. AR 15-16.

Plaintiff initially applied for SSI on August 6, 2019, alleging disability beginning September 1, 2009. AR 13. The claim was denied on February 12, 2020, and denied again upon reconsideration on August 31, 2020. AR 91, 96. Plaintiff requested a hearing before an administrative law judge (ALJ). Due to the COVID-19 pandemic, ALJ Robert Frank Spaulding held a hearing via telephone on June 15, 2021. AR 13. On July 28, 2021, the ALJ denied Plaintiff's claim. *Id.* The Appeals Council denied Plaintiff's request for review, AR 1, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review from this Court of the ALJ's final decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step might be dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 6, 2019. AR 15. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, mild hearing loss, history of seizures, and migraines. *Id.* The ALJ also considered the following medically determinable impairments: mild asthma, anxiety, depression, and neurofibromatosis; the ALJ found these impairments non-severe. AR 16. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting one of the listed impairments in the regulations. AR 17.

The ALJ next assessed Plaintiff's RFC. The ALJ found Plaintiff could perform a full range of work at all exertional levels, with the following non-exertional limitations: no climbing of ladders, ropes, or scaffolds; limited to occasional exposure to loud noises, and no exposure to hazards (unprotected heights and moving mechanical parts). AR 18. At step four, the ALJ found

that Plaintiff had no past relevant work. AR 21. At step five, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 22. These included representative occupations of assembler (200,600 jobs nationally), mail clerk (124,000 jobs nationally), and garment sorter (125,000 jobs nationally). *Id.* Thus, the ALJ found that Plaintiff was not disabled from August 6, 2019, through the date of the decision, July 28, 2021. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ erred in his decision in two ways. First, at step two, Plaintiff asserts that the ALJ erred by failing to categorize Plaintiff's neurofibromatosis as a severe impairment, despite considering Plaintiff's underlying symptoms of neurofibromatosis. Second, Plaintiff argues the ALJ erred by rejecting the medical opinion from Plaintiff's neurologist, Dr. Verena Samara, MD.

### A.  Step Two

At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. An impairment is severe if it "significantly limit[s]" the claimant's ability to do both basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.920(c); SSR 85-28, *available at* 1985 WL 56856. An impairment is medically determinable if it is diagnosed based on "objective evidence from an acceptable medical source." SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 416.921.

Plaintiff argues that the ALJ improperly found her neurofibromatosis not severe. Plaintiff acknowledges that the ALJ found two symptoms of neurofibromatosis severe at step two—migraines and seizures—but argues that the ALJ neglected to consider the full picture of her disorder, including the nerve pain and anxiety it produced and how it worsened over time. The

Commissioner responds that the substantial evidence supports that the disorder itself was nonsevere, as found by the ALJ, and that even if the ALJ erred, the error was harmless because the ALJ considered neurofibromatosis and its related symptoms in his analysis after step two.

The step two inquiry is a "*de minimus* screening device to dispose of groundless claims." *Yuckert*, 482 U.S. at 153-54. Omissions at step two are harmless error if step two is decided in the claimant's favor and the nonsevere conditions are considered by the ALJ. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). In *Buck*, the Ninth Circuit explained:

> Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Id.* at 1049. The Ninth Circuit then concluded that the plaintiff "could not possibly have been prejudiced" by an omission of a severe impairment at step two because the ALJ decided step two in the plaintiff's favor. *Id.*

In step two, the ALJ found in Plaintiff's favor. The ALJ found seizures and headaches to be severe impairments. Although the ALJ specifically found anxiety, hearing loss, and neurofibromatosis non-severe, the ALJ considered these impairments later in his analysis. For example, the ALJ specifically addressed nerve and neuropathic pain, evaluated Plaintiff's mental health functioning, and specifically stated that the ALJ considered Plaintiff's non-severe impairments in evaluating her functioning. The ALJ considered the entire medical record in evaluating Plaintiff's RFC and evaluating symptom testimony and medical testimony, including records relating to the symptoms and impairments Plaintiff argues should have been considered

PAGE 7 – OPINION AND ORDER

severe. Thus, any alleged error at step two is harmless. *Buck*, 869 F.3d at 1049; *Lewis*, 498 F.3d at 911.

### B.  Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the opinions of Plaintiff's neurologist, Dr. Samara. Plaintiff asserts that the ALJ cherry-picked evidence and relied on unrelated treatment notes to detract from Dr. Samara's opinion.

Under the social security regulations, an ALJ primarily considers the "supportability" and "consistency" of medical opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

An ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record, the objective medical evidence, or the source's own treatment records. *See Tommasseti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (other medical opinions and objective record evidence); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (own treatment notes and observations). An ALJ errs by rejecting or assigning minimal weight to a

medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's decision. *Garrison*, 759 F.3d at 1012-13.

On March 13, 2020, Dr. Samara wrote a letter stating that Plaintiff would miss "multiple days per month" of work due to her headaches and would have additional limitations due to neuropathic pain. AR 534. On June 2, 2021, Dr. Samara completed a form provided to her by Plaintiff's counsel opining about the limitations caused by Plaintiff's headaches and neuropathic pain. AR 674-77. Dr. Samara stated that Plaintiff had headaches two-to-three times per week, lasting for six hours, that for severe headaches she may need to rest in a dark and quiet room, that she has functional limitations due to pain and lack of concentration, that her concentration would be impaired 20% of a standard work week, and that she would miss two or more days of work per week. *Id.*

The ALJ found Dr. Samara's opinions unpersuasive as inconsistent with her own treatment notes, statements from Plaintiff that she was feeling well, and other medical evidence from her primary care and mental health providers. The ALJ noted that at the time Dr. Samara opined that Plaintiff's headaches were fully disabling, treatment notes showed that Plaintiff's headaches improved with medication. For her neuropathic limitations, the ALJ recited Dr. Samara's treatment notes describing normal findings and that Dr. Samara recommended no intervention for Plaintiff's neuropathic pain other than topical lidocaine ointment and medication. The ALJ also highlighted Plaintiff's primary care physician's descriptions of benign findings and comment that Plaintiff was not suffering from any tingling or numbness.

Plaintiff argues that the benign findings relied on by the ALJ do not contradict the opinions of Dr. Samara, and that the ALJ failed to consider that Plaintiff's neurofibromatosis

would worsen. The ALJ, however, was considering Dr. Samara's opinion of Plaintiff's condition at the time of Dr. Samara's opinion and whether Dr. Samara's opinion was supported by and consistent with the record when it was rendered. Dr. Samara's treatment notes and other treatment providers' notes indicated that the symptoms of Plaintiff's neurofibromatosis—including neurological pain and concentration problems, migraines, and anxiety—were being successfully managed with medication. *See* AR 545; AR 641-42. On February 2, 2021, Dr. Samara reported that Plaintiff's headaches were decreasing, and medication and treatment was helping reduce her symptoms of neurofibromatosis, including nerve pain and anxiety. AR 641-42.

Plaintiff also argues the ALJ did not appropriately consider Dr. Samara's opinion about Plaintiff's "severe generalized pain." The ALJ determined, however, that Dr. Samara's opinion that Plaintiff was experiencing so much pain that she could not concentrate or focus was undermined by Dr. Samara's treatment notes describing Plaintiff as attentive, oriented with normal memory, intact fund of knowledge, normal speech, and language, and full muscle strength at her appointments. AR 20, 544, 695.

Plaintiff also argues the ALJ erred by incorrectly assigning unrelated treatment note observations to Plaintiff's underlying condition. This mischaracterizes the ALJ's opinion. One of Dr. Samara's proffered opinions about Plaintiff's symptoms was that Plaintiff would have an inability to focus because of extreme pain. The ALJ pointed to Dr. Samara's treatment notes describing Plaintiff as attentive and oriented. AR 20. The ALJ was within his discretion to determine this was an internal inconsistency. The ALJ also cited other medical records as undermining Dr. Samara's opinion, including that Plaintiff's mental health provider and provider Dr. Scott Falley employed conservative treatment. AR 20-21. The ALJ also found Dr. Falley's

October 2001 medical opinion inconsistent with Plaintiff's recent examinations. AR 21. In making this finding, the ALJ relied on findings by State Agency medical reviewers. *Id.*

It was a rational reading of the evidence that Dr. Samara's opinion was not consistent with or supported by the record. Although Plaintiff's interpretation of the evidence may also be rational, when the evidence is "susceptible to more than one rational interpretation," the ALJ's decision must be affirmed. *See Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Accordingly, there is substantial evidence supporting the ALJ's evaluation of Dr. Samara's opinion.

## CONCLUSION

The Court AFFIRMS the decision of the Commissioner's that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 29th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge